**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

```
RACHEL A. AYERS,              *
                             *
    Plaintiff,               *
                             *
vs.                          *   CIVIL ACTION NO. 21-00461-B
                             *
KILOLO KIJAKAZI,             *
Acting Commissioner of       *
Social Security,             *
                             *
    Defendant.               *
```

## ORDER

Plaintiff Rachel A. Ayers ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* On April 28, 2022, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case. (Doc. 13). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 14). Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

I.   **Procedural History**[1]

Plaintiff protectively filed an application for benefits on October 17, 2019.  (Doc. 12 at 225-27).  She alleged disability beginning on February 1, 2016, later amended to July 4, 2019, based on degenerative disc disease, bipolar disorder, depression, anxiety, polycystic ovary syndrome, severe fatigue, a herniated disc, and sciatic nerve pain.  (Id. at 225, 228, 245, 249, 344).  Plaintiff's application was denied at the initial stage.  (Id. at 111, 127, 129, 147).  Upon timely request, Plaintiff was granted a hearing before an Administrative Law Judge ("ALJ"), which was held on February 1, 2021.  (Id. at 62, 162).  Plaintiff, who was represented by counsel, participated in the hearing by telephone and provided testimony relating to her claims.  (Id. at 64-75, 80).  A vocational expert ("VE") also testified at the hearing.  (Id. at 76-80).  On March 3, 2021, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled.  (Id. at 47-56).  The Appeals Council denied Plaintiff's request for review on September 1, 2021; therefore, the ALJ's decision became the final decision of the Commissioner.  (Id. at 6).

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  Oral argument was held on December 5, 2022 (Doc. 19), and the parties agree that

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.  Issue on Appeal

> **Whether the ALJ's RFC assessment is supported by substantial evidence?**

## III. Factual Background

Plaintiff was born in 1987 and was thirty-one years of age on her alleged disability onset date. (Doc. 12 at 228). Plaintiff completed high school and attended some college. (Id. at 250, 429). Plaintiff has a driver's license and can drive. (Id. at 431). She has past relevant work as a material handler, gas station cashier, and commercial cleaner. (Id. at 68-69, 76-77). At her administrative hearing, Plaintiff testified that she can no longer work because of bipolar disorder, anxiety, depression, and orthopedic issues which cause chronic lower back pain that radiates down her left leg. (Id. at 70-75).

## IV.  Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards were applied.[2] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

1990).   A court may not decide the facts anew, reweigh the
evidence, or substitute its judgment for that of the Commissioner.
Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The
Commissioner's findings of fact must be affirmed if they are based
upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235
(11th Cir. 1991).   "Substantial evidence is more than a scintilla,
but less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to support
a conclusion."   Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th
Cir. 1983).   In determining whether substantial evidence exists,
a reviewing court must consider the record as a whole, taking into
account evidence both favorable and unfavorable to the
Commissioner's decision.   Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS
10163, at *4 (S.D. Ala. June 14, 1999).

## V.   Statutory and Regulatory Framework

An individual who applies for Social Security disability
benefits must prove her disability.   See 20 C.F.R. §
404.1512(a)(1).  Disability is defined as the "inability to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than twelve months." 42 U.S.C.
§ 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a).   The Social

Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven her disability.  See 20 C.F.R. § 404.1520.

The first two steps of the evaluation require the claimant to prove that she (1) has not engaged in substantial gainful activity and (2) has a severe impairment or combination of impairments. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam);[3] see 20 C.F.R. § 404.1520(a)(4)(i)-(ii).  If the claimant does not meet her burden on either of these two inquiries, she will be found not disabled.  Carpenter, 614 F. App'x at 486; see 20 C.F.R. § 404.1520(a)(4)(i)-(ii), (b), (c).  If the claimant meets her burden at both of the first two steps, the evaluation proceeds to step three, where if the claimant proves that her impairment or combination of impairments meets or equals a listed impairment and satisfies the duration requirement, she will automatically be found disabled.  Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); see 20 C.F.R. § 404.1520(a)(4)(iii), (d).

If the claimant cannot prevail at the third step, the

---

[3] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority.  See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."); Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

evaluation proceeds to step four, where the claimant must prove an inability to perform her past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); see 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). Phillips, 357 F.3d at 1238. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see 20 C.F.R. § 404.1545(a). The RFC assessment is used to determine whether a claimant can perform past relevant work at step four, and if necessary, to determine whether a claimant can adjust to other work at step five. Phillips, 357 F.3d at 1238; see 20 C.F.R. § 404.1520(e).

If the claimant meets her burden at step four, the burden temporarily shifts to the Commissioner to prove at step five that the claimant is capable of performing other work that exists in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1278-79 (11th Cir. 2020); see 20 C.F.R. § 404.1520(a)(4)(v), (g). If the Commissioner makes this showing, the burden then shifts back to the claimant to prove her inability to perform those jobs in order to be found disabled. Goode, 966 F.3d at 1279.

## VI.   **The ALJ's Findings**

In this case, the ALJ found that Plaintiff did not engage in substantial gainful activity from her amended alleged onset date of July 4, 2019 through her date last insured of December 31, 2020.[4]   (Doc. 12 at 49).   The ALJ found that Plaintiff has the severe impairments of degenerative disc disease, depression, and anxiety, and that her impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).   (Id. at 49-51).

The ALJ further found that Plaintiff has the RFC to perform a reduced range of medium work, with the following additional limitations: she can understand, remember, apply, and carry out simple tasks and detailed but uninvolved tasks, and can persist at that level of complexity for eight hours a day, five days a week consistently; she can have no more than frequent interactions with the general public, supervisors, and coworkers; she can have only gradual changes in the work setting; and she can never climb ladders, ropes, or scaffolds.   (Id. at 51).   Based on the testimony

---

[4] "DIB claimants must show that they were disabled on or before their last-insured date." Mason v. Comm'r of Soc. Sec., 430 F. App'x 830, 831 (11th Cir. 2011) (per curiam).   Thus, to establish her eligibility for disability insurance benefits, Plaintiff had to prove that she suffered from a disability between her amended alleged onset date of July 4, 2019, and her last-insured date of December 31, 2020.   See id.

of the VE and the record before him, the ALJ found that Plaintiff can perform her past relevant work as a material handler and can also perform other jobs that exist in significant numbers in the national economy, such as kitchen helper, hospital cleaner, and counter supply worker.  (Id. at 55-56).  Thus, the ALJ concluded that Plaintiff was not disabled during the relevant period.  (Id. at 56).

**VII. <u>Discussion</u>**

> **The ALJ's findings regarding Plaintiff's RFC are supported by substantial evidence.**

Plaintiff argues that the ALJ erred by formulating an RFC that is not supported by substantial evidence.  (Doc. 15 at 2-3).  Specifically, Plaintiff contends that the opinions of her treating psychiatrist, Dr. Mark A. Haygood, D.O., should have been accorded greater weight, and that the ALJ erred by basing the physical RFC assessment on the opinions of two State agency reviewing physicians whose opinions were based on incomplete evidence.  (Id. at 9).  Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

RFC is a measure of the most a claimant can do on a regular and recurring basis despite credible and supported limitations.  See 20 C.F.R. § 404.1545.  Determinations of a claimant's RFC are reserved for the ALJ, and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to work

despite her impairments.  Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000).  Once the ALJ has determined a claimant's RFC, the claimant bears the burden of demonstrating that the ALJ's determination is not supported by substantial evidence.  See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985) (per curiam).

For a court to find that substantial evidence supports an ALJ's RFC assessment, the ALJ must provide "a sufficient rationale to link substantial record evidence to the legal conclusions reached." Eaton v. Colvin, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (quotations omitted).  However, "it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." Boone v. Berryhill, 2019 U.S. Dist. LEXIS 74764, at *15, 2019 WL 1983813, at *5 (S.D. Ala. May 3, 2019). Nor is there a "rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, [such as] where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Packer v. Comm'r, Soc. Sec. Admin., 542 F. App'x 890, 891-892 (11th Cir. 2013) (per curiam) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Plaintiff first challenges the RFC assessment by arguing that the ALJ erred in finding that she "improved with 'excellent' results" after undergoing a left L5-S1 microdiscectomy on March

31, 2020.  (Doc. 15 at 6 (quoting Doc. 12 at 54)).  Plaintiff also
contends that it was error for the ALJ to find that she could
perform medium work "despite a recent back surgery and continued
lower back pain complaints with dysesthesia in the left leg." (Id.
at 9).  Defendant counters that the ALJ was correct in noting that
Plaintiff recovered well from surgery and had "extremely
successful" results through November 2020, as "Dr. [Clinton]
Howard, [M.D.,] her back surgeon, said so himself on November 5,
2020."  (Doc. 16 at 8 (citing Doc. 12 at 477)).

The record reflects that Plaintiff presented to Dr. Howard
for a follow-up regarding her lower back pain on November 5, 2020,
and reported that she "[h]ad a sudden increase in her lumbar back
pain nine days ago."  (Doc. 12 at 477).  Dr. Howard noted that
Plaintiff's pain was "mainly back without leg," and that she had
a "[p]revious microdiscectomy done that was extremely successful."
(Id.).  Upon examination, Dr. Howard noted that Plaintiff had
"normal strength in all extremities [and] mild pain with flexion
and extension" but had "decreased disk height at L5-S1, L4-5."
(Id.).  Dr. Howard assessed Plaintiff with low back pain, and his
plan to treat it involved medications and physical therapy in the
subsequent week "if not better."  (Id.).  Dr. Howard indicated
that Plaintiff should follow up with his office in a month.  (Id.).

In his written decision, the ALJ reviewed the medical evidence
regarding Plaintiff's lower back pain.  (Id. at 51-52).  For

10

example, the ALJ noted that "findings were relatively mild during a July 2019 orthopedic consultation, [specifically noting that] straight leg raise testing did not exacerbate [Plaintiff's] symptoms,[5] and she did not otherwise show any gross sensory deficits on objective examination." (Id. at 52; see id. at 403). The ALJ noted that Plaintiff received conservative treatment initially, with a series of epidural steroid injections. (Id. at 52; see id. at 411-20, 485-86).

Next, the ALJ noted that when Plaintiff presented to Dr. Jaspreet Singh Batra, M.D., for a consultative medical examination in February 2020, she was in no acute distress and had a normal gait with slightly decreased strength of 4/5 in the extremities. (Id. at 52; see id. at 423-24). The ALJ noted that Plaintiff maintained normal sensory function without atrophy, and her seated leg raise testing was negative bilaterally, but supine leg raise testing was positive on the left. (Id. at 52; see id. at 424).[6]

---

[5] Specifically, the July 2019 orthopedic treatment record reflects that straight leg raise testing on the left did exacerbate Plaintiff's symptoms, while straight leg raise testing on the right did not. (See Doc. 12 at 403).

[6] Dr. Batra also noted that Plaintiff had normal station, was able to get on and off the examination table with ease, could walk on her heels and toes with some difficulty, could not squat and rise, and had decreased range of motion at the left hip. (Doc. 12 at 424). Plaintiff's lumbar spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally, and it was noted that range of motion was intact but there was "mild pain to back on [range of motion]." (Id.).

The ALJ also noted Dr. Batra's opinion that Plaintiff "would be able to perform the following work-related activities despite her impairments: sitting, standing, walking, lifting, carrying, handling objects, hearing, speaking, and traveling," and the ALJ determined that Dr. Batra's opinion was "less restrictive than warranted by the record." (Id. at 54; see id. at 425).

The ALJ further observed that "a March 2020 lumbar spine MRI revealed a left paracentral/lateral disc extrusion at L5-S1 resulting in a narrowing of the left side neural foramina and some mild effacement of the anterior theca[l] sac." (Id. at 52; see id. at 443). The ALJ noted that the "study also showed a broad-based disc bulge at L3-4 with a more focal left lateral disc protrusion resulting in narrowing of the central canal with the AP diameter measuring 8mm and some narrowing of the left sided neural foramina." (Id. at 52; see id. at 443). The ALJ further noted that after follow-up examination revealed 10/10 pain, positive straight leg raise testing, and weakness of Plaintiff's ability to push off, Plaintiff underwent a left-sided L5-S1 microdiscectomy on March 31, 2020. (Id. at 52; see id. at 439, 584). The ALJ observed that Plaintiff "recovered well from the procedure with 'extremely successful' results through November 2020, when she returned to the Orthopedic Group reporting a sudden increase in her lumbar back pain nine days prior to her appointment." (Id. at 52; see id. at 477, 480).

The ALJ further noted that despite Plaintiff's subjective complaints, "objective examination showed only 'mild' pain with flexion and extension, and [Plaintiff] otherwise maintained normal strength in all extremities despite decreased disc height at L5-S1 and L4-5." (Id. at 52; see id. at 477). Finally, the ALJ found that Dr. Howard "treated [Plaintiff] conservatively with medications, including Medrol, Mobic, Flexeril, and Ultram, as well as a referral to physical therapy." (Id. at 52; see id. at 476-78, 566-83). Based on a review of the record, the Court concludes that the ALJ's characterization of Plaintiff's treatment record is, on the whole, accurate and supported by substantial evidence.

And, as noted by Defendant, Dr. Howard indicated that Plaintiff's surgery and recovery were extremely successful through November 2020, when she reported a recent sudden increase in her pain. (See id. at 477). Furthermore, on April 15, 2020, two weeks post-surgery, Plaintiff indicated that she was "feeling much better at this time," although she stated that she had "some dysesthesia in the left leg with no pain." (Id. at 479). Examination on that date indicated that "the surgical site is well approximated with no erythema, edema, or drainage noted," and Plaintiff "ambulate[d] in the room back and forth without any difficulties." (Id.). Therefore, substantial evidence supports the ALJ's characterization of Plaintiff's results after surgery.

Plaintiff also argues that the ALJ's RFC assessment is not supported by substantial evidence because it "was based on the opinions of two state agency reviewing physicians whose opinions were based on incomplete evidence, [as neither] reviewed the Plaintiff's MRI from March 2020 or the Plaintiff's surgery report from March 2020." (Doc. 15 at 9). Plaintiff further argues that the ALJ erred because he found that the opinion of State agency reviewer Dr. Alton James, M.D., was less restrictive than warranted by the evidence but "adopted essentially the same [RFC]" as that assessed by Dr. James. (Id.).

First, to the extent Plaintiff suggests that the ALJ must rely on the medical opinion of a particular doctor who has reviewed all the medical evidence of record, her argument fails. As noted previously, "it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." Boone, 2019 U.S. Dist. LEXIS 74764, at *15, 2019 WL 1983813, at *5. Indeed, an ALJ need not rely on any particular medical opinion, as it is the ALJ who is responsible for reviewing all of the evidence when determining the RFC. See Beech, 100 F. Supp. at 1331.[7]

Similarly, with respect to Plaintiff's argument that the ALJ

---

[7] Therefore, Plaintiff's argument that the ALJ "essentially substituted [his] own medical opinion" because the RFC assessment does not track with the opinion of Plaintiff's treating psychiatrist (see Doc. 15 at 9) is also without merit.

erroneously relied on the opinions of the State agency physicians because they had not reviewed the March 2020 MRI results or surgery reports, the Court again notes that determinations of a claimant's RFC are reserved for the ALJ.  See id.  It is the responsibility of the ALJ to review all of the relevant evidence, including treatment records, objective medical evidence, medical opinions, prior administrative medical findings, and a claimant's allegations and testimony at the administrative hearing. Plaintiff cites no case law to the contrary, nor does she cite case law establishing that an ALJ necessarily errs by formulating an RFC consistent with that assessed by a physician who did not review every piece of evidence in the file.  (See Doc. 15); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) ("[E]ven if the non-examining doctor was unable to review all of [the claimant's] medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as [the claimant's] testimony.").

As to Plaintiff's suggestion that the ALJ erred by finding that Dr. James's opinion was less restrictive then warranted by the evidence yet adopting essentially the same physical RFC with the exception of finding that Plaintiff could not climb ladders, ropes, or scaffolds, the Court finds no inconsistency in the ALJ's

findings.  It is clear from the ALJ's decision that although he agreed with the assessments of Dr. James and Dr. Amason that Plaintiff was capable of performing medium-level work, he disagreed with Dr. James's opinion that Plaintiff could frequently climb ladders, ropes, and scaffolds and instead found that Plaintiff "should never climb ladders, ropes, or scaffolds" in order "to avoid risk of injury, accident, or exacerbation of her pain symptoms." (Doc. 12 at 54).  This quite clearly accords with the ALJ's statement that "Dr. James' opinion is less restrictive than warranted by the record . . . ." (See id.).

Moreover, as asserted by Defendant, the MRI results alone are not conclusive evidence that Plaintiff *remained* more limited than determined by the State agency experts.  (See Doc. 16 at 13). Indeed, the ALJ acknowledged that the MRI results were significant but also noted that Plaintiff's condition improved with "excellent" results after surgery, a finding that is supported by substantial evidence. (Doc. 12 at 54).  Accordingly, for the foregoing reasons, Plaintiff's arguments concerning the ALJ's physical RFC assessment are not persuasive.[8]

---

[8] In her brief, Plaintiff cites certain evidence that was submitted to the Appeals Council but was not presented to the ALJ. (See Doc. 15 at 7 n.1).  However, Plaintiff does not challenge the Appeals Council's denial of her request for review and argues only that the ALJ's RFC assessment was not supported by substantial evidence. Because Plaintiff has challenged only the ALJ's decision in this case, the Court will not consider the evidence cited by Plaintiff that was presented to the Appeals Council but was not in

Plaintiff also implies that the ALJ erred by rejecting her complaints as subjective while failing to credit fully the opinions from her treating psychiatrist, Dr. Haygood. According to Plaintiff, "as [her] treating physician, Dr. Haygood was in the best position to know of the severity of the Plaintiff's mental health symptoms and how those symptoms would affect her in a workplace environment." (Doc. 15 at 9). Plaintiff also contends that Dr. Haygood's opinion is consistent with the record, and that the ALJ provided very little analysis when finding that Dr. Haygood's opinion was not persuasive. (Id.).

The revised regulations applicable to Plaintiff's claim direct ALJs not to "defer or give specific evidentiary weight, including controlling weight," to any medical opinions,[9] including those from a treating physician. 20 C.F.R. § 404.1520c(a); see Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 896-98 (11th Cir. 2022) (finding that § 404.1520c validly abrogated both the

_____

the record before the ALJ. See Wilson v. Comm'r of Soc. Sec., 647 F. App'x 951, 952 (11th Cir. 2016) (per curiam) ("If the applicant attacks only the ALJ's decision, we may not consider evidence that was presented to the Appeals Council but not to the ALJ.") (citing Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998)).

[9] Under the revised regulations, the term "medical opinion" is no longer defined to include a diagnosis, prognosis, or a statement reflecting a judgment about the nature and severity of an impairment. See 20 C.F.R. § 404.1513(a)(3). Rather, it refers only to a medical source's statement about what a claimant can do despite her impairments, and whether there are any limitations in the claimant's abilities to perform the various demands of work and adapt to work-related conditions. Id. at § 404.1513(a)(2).

treating-physician rule, which required ALJs to give substantial or considerable weight to the medical opinions of treating physicians unless there was good cause not to do so, and earlier Eleventh Circuit precedents applying the treating-physician rule). Instead, ALJs must "evaluate the persuasiveness" of each medical source's medical opinions[10] by considering the following five factors, as appropriate: (1) supportability, (2) consistency, (3) relationship with the claimant,[11] (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."[12]   20 C.F.R. § 404.1520c(a) & (c)(1)-(5).  Supportability and consistency are the two most important factors, and ALJs are required to explain how they considered those two factors in evaluating the persuasiveness

---

[10] When a single medical source provides multiple medical opinions, the ALJ is not required to articulate how he considered each individual opinion from that source.  20 C.F.R. § 404.1520c(b)(1). Instead, the ALJ must articulate how he considered the opinions from that source together in a single analysis using the factors outlined in § 404.1520c(c)(1)-(5).  Id.

[11]   The relationship-with-the-claimant factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[12] The "other factors" include, but are not limited to, the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5).

of a medical source's opinion.  Id. at § 404.1520c(a) & (b)(2).[13]

    The Eleventh Circuit has recently concluded that an ALJ does "not err by declining to give more weight to the medical opinions of [a claimant's] treating physicians" because § 404.1520c "forbids [ALJs] from 'defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s).'"  Harner, 38 F.4th at 898 (quoting 20 C.F.R. § 404.1520c(a)).  For this reason, Plaintiff's argument that the ALJ erred by failing to give greater or controlling weight to Dr. Haygood's opinion simply because of his treating physician status, and because he "was in the best position to know of the severity of the Plaintiff's mental health symptoms and how those symptoms would affect her in a workplace environment" (see Doc. 15 at 9), fails.

    Plaintiff also asserts generally that Dr. Haygood's opinion is well-supported and consistent with the record, thereby implying that the ALJ's rejection of this opinion is not based on substantial evidence.  (See id.).  On March 11, 2020, Dr. Haygood indicated that a complete psychiatric evaluation was performed on Plaintiff previously, and that the date of the last evaluation of Plaintiff was February 26, 2020.  (Doc. 12 at 436).  Dr. Haygood

---

[13] ALJs may also explain how they considered the remaining factors, as appropriate, but they are generally not required to do so.  See 20 C.F.R. § 404.1520c(b)(2)-(3).

opined: "Based on the office visit performed on 2/26/20, the bipolar and generalized anxiety disorder are overall stable. However, mood and anxiety fluctuations can occur and lead to decompensation. She will require chronic monitoring and treatment based on the chronicity of her diagnosis." (Id.). Dr. Haygood also provided a series of specific opinions regarding Plaintiff's ability to function in a work setting on a sustained basis. (See id. at 435-36). He opined that Plaintiff has no limitations at all in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; understanding, carrying out, and remembering instructions; responding appropriately to supervision; performing simple tasks; performing repetitive tasks; and completing work-related activities in a normal workday or workweek. (Id.). Dr. Haygood further opined that Plaintiff has a mild limitation in her ability to respond appropriately to coworkers; that she had moderate limitations in her abilities to interact with others, adapt and manage herself, and respond appropriately to customary work pressures; and that she would experience one or two expected episodes of decompensation in a work-like setting which would cause her to withdraw from the situation or to experience exacerbation of signs and symptoms for a period lasting at least two weeks. (Id.). Dr. Haygood indicated that these limitations were not expected to last for twelve months or longer and specifically noted

that Plaintiff's symptoms "can improve or worsen based on many factors/stress." (Id. at 436).

On January 13, 2021, *after* Plaintiff's date last insured, Dr. Haygood completed an updated assessment regarding Plaintiff's mental functioning. (Id. at 592). In the updated assessment, Dr. Haygood indicated that Plaintiff began treatment with him on February 11, 2019, and that he was treating Plaintiff for her current diagnoses of bipolar disorder, generalized anxiety disorder, panic disorder, bereavement, and nicotine dependence in remission. (Id.). Dr. Haygood listed Plaintiff's subjective symptoms, which included amotivation, sadness, anxiety, mood instabilities surrounding panic attacks, decreased energy, excessive sleep, feelings of being overwhelmed, and anhedonia. (Id.). He opined that work activity would greatly increase Plaintiff's symptoms to the extent of causing distraction from or total abandonment of task, and that Plaintiff may miss work due to mood and anxiety symptoms. (Id.). Dr. Haygood further opined that Plaintiff could not engage in any form of gainful employment on a repetitive, competitive, and productive basis over an eight-hour workday, forty hours a week, without missing more than two days of work per month or experiencing frequent interruptions to her work routine due to symptoms of her mental problems. (Id.).

The ALJ discussed the opinions expressed in Dr. Haygood's updated assessment and found that the updated assessment was not

persuasive. (Id. at 54-55). The ALJ stated that the subjective symptoms listed by Dr. Haygood were "unsupported by corresponding treatment records, which generally revealed normal behavior, full orientation, normal attention, concentration, and memory, and fair to good insight and judgment." (Id. at 54). The ALJ also noted that Plaintiff had "remained relatively stable on conservative treatment with medications without any emergent or inpatient treatment for anxiety exacerbations or panic attacks during the relevant period." (Id. at 54-55). Based on a review of the record, the Court concludes that the ALJ's assessment is based on substantial evidence.

As noted above, Dr. Haygood specifically indicated in March 2020 that Plaintiff's mental impairments were stable with medications. (Id. at 436). Although his opinion changed less than a year later based on Plaintiff's increased symptomology, Plaintiff has not pointed to any evidence that she required any emergency or inpatient treatment for anxiety exacerbations or panic attacks during the relevant period.

With regard to Plaintiff's subjective complaints of increased symptomology, the ALJ's finding that such complaints are unsupported by the corresponding treatment records is also supported by substantial evidence in the record. As noted previously, Dr. Haygood opined on March 11, 2020 that Plaintiff had no estimated deficiencies of concentration, persistence, or

pace which would result in a failure to complete tasks in a timely and appropriate manner, and no limitations in her abilities to understand, remember, or apply information, understand, carry out, and remember instructions, respond appropriately to supervision, perform simple tasks or repetitive tasks, and complete work-related activities a normal workday or workweek.  (Id. at 435-36). In addition, as noted by the ALJ, shortly after her amended alleged disability onset date, "in August 2019, [Plaintiff] reported 'doing well emotionally' and stated that her medication had been 'very helpful.'"  (Id. at 53; see id. at 537).

The ALJ also observed that Plaintiff "otherwise presented with a stable, albeit elevated mood, and follow-up examinations typically revealed appropriate behavior, full orientation, normal attention, concentration, and memory, linear thought processes, and fair to good insight and judgment."  (Id. at 53; see id. at 487 (on *December 21, 2020*, Plaintiff "presented with stable mood . . . and states that therapy is helpful and [she is] successfully using [cognitive behavioral therapy] skills learned during sessions"), 489-90 (on *November 13, 2020*, Plaintiff reported her mood as "fine," and mental status exam revealed appropriate behavior, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and "Fair-good" insight and judgment),

492-95 (on *October 14, 2020*, Plaintiff "presented with stable mood," and mental status exam revealed appropriate behavior, good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and "Fair-good" insight and judgment), 499 (on *July 6, 2020*, Plaintiff reported her mood as "Ok," and mental status exam revealed appropriate behavior, good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and "Fair-good" insight and judgment), 501-04 (on *June 1, 2020*, Plaintiff "presented with stable mood," and mental status exam revealed appropriate behavior, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and "Fair-good" insight and judgment), 505-08 (on *May 4, 2020*, Plaintiff "presented with stable mood," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and "Fair-good" insight and judgment), 510-11 (on *March 26, 2020*, Plaintiff reported that "her

mood fluctuations have 'leveled out,'" and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and fair insight and judgment); 513-16 (on *February 26, 2020*, Plaintiff "presented with stable mood" and reported that "therapy and medication are both helpful," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and fair insight and judgment), 517-19 (on *January 22, 2020,* Plaintiff reported her mood as "calm," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and fair insight and judgment), 521-23 (on *December 11, 2019*, Plaintiff reported her mood as "good," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and good insight and judgment), 525-28 (on *November 7, 2019,* Plaintiff presented "with stable mood," and mental status

exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and good insight and judgment), 529-32 (on *October 7, 2019*, Plaintiff presented "with stable mood," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and good insight and judgment), and 534-36 (on *August 5, 2019*, Plaintiff reported her mood as "I feel great" and reported "that she is doing well with her anxiety and finds the [K]lonopin helpful as needed [and] that she takes [K]lonopin twice a week if she has overwhelming anxiety symptoms," and mental status exam revealed good eye contact, good hygiene, full orientation, 5/5 attention and concentration, 3/3 immediate and recent memory, intact remote memory, linear, logical, and goal-directed thought processes, intact abstract reasoning, and good insight and judgment)).

The ALJ also noted that in February 2020, during Plaintiff's consultative mental examination with Dr. Benjamin Hill, Ph.D., Plaintiff "presented on examination as generally pleasant and cooperative with no unusual behaviors. Her mood and affect seemed appropriate without signs of anxiety, and she showed a fully alert

and oriented sensorium." (Id. at 53; see id. at 430). Dr. Hill noted in his examination report that Plaintiff "did not appear anxious." (Id. at 430). He also noted that Plaintiff was able to subtract serial fours correctly, she exhibited "no signs of confusion, loose associations, or tangential or circumstantial thinking," and she "spoke at a normal pace" and her "speech did not appear pressured." (Id. at 430-31). Similar to the opinion rendered by Dr. Haygood in March 2020 (see id. at 436), Dr. Hill opined that "a favorable response to treatment could be expected within 6-12 months." (Id. at 431). Accordingly, Dr. Hill's consultative evaluation provided substantial support for the ALJ's finding that Dr. Haygood's most recent opinions are unpersuasive.

In sum, the ALJ appropriately evaluated the treatment records, medical opinions, and prior administrative medical findings, and he formulated an RFC that is based on substantial evidence.[14] As a result, Plaintiff's claim must fail.

---

[14] Although Plaintiff has cited evidence in the record which she claims supports a finding that she is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different

## VIII.    <u>Conclusion</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **28th** day of **March, 2023.**

 **/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

finding could be supported by substantial evidence, but whether *this* finding is.") (emphasis in original).